**Opinion filed June 11, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00351-CV
_____

## IN THE INTEREST OF M.G., A CHILD

**On Appeal from the 220th District Court**
**Comanche County, Texas**
**Trial Court Cause No. FM00218**

## O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of M.G.'s mother and father. Both of the parents filed an appeal. On appeal, the mother presents one issue for review, and the father presents three. We modify and affirm.

### *Issues Presented*

The mother asserts in her sole issue that the evidence is legally and factually insufficient to support the trial court's finding that termination of the mother's parental rights was in M.G.'s best interest. In the father's first and second issues, he

challenges the legal and factual sufficiency of the evidence in support of the trial court's findings. In his third issue, the father asserts that the trial court abused its discretion when it denied the father's request for an extension.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that the mother had committed five of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), (O), and (P)—and that the father had committed four of those acts—those found in subsections (D), (E), (N), and (O). Specifically, the trial court found that the parents had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that the parents had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; that the parents had constructively abandoned the child; that the parents had failed to comply with the provisions of a court order that specifically established the actions necessary for the parents to obtain the return of their child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect; and that the mother had used a controlled substance in a manner that endangered the child and either failed to complete a substance abuse treatment program or abused the drugs after completing such a program. The trial court also

found, pursuant to Section 161.001(b)(2), that termination of both parents' parental rights would be in the best interest of the child.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Background*

The record shows that M.G. was ten years old at the time of the final hearing. The Department had removed M.G. from her mother's care due to the condition of the home, M.G. not regularly attending school, and the mother's drug use. While this case was pending, the mother tested positive for methamphetamine and also refused numerous drug tests. She failed to complete various services that were required of her: counseling, parenting, MHMR, AA/NA, and drug testing. The mother did not regularly visit M.G. during the three or four months preceding the final hearing. Despite the Department's efforts, the mother showed no interest in providing a safe and stable environment for M.G., and the mother continued to use methamphetamine. The home in which the mother lived, which was owned by the father, was inappropriate due to the lack of any electricity and to "dog feces all in the home, cats living on dressers, food, trash everywhere." Additionally, the mother did not provide the Department with any proof that she was employed while this case was pending.

At the time of removal, the father was incarcerated for "possession charges." The Department sent parenting packets to the father while he was incarcerated. The father did not complete those packets and return them to the Department. The Department also sent several letters to the father; however, the Department received no responses from him. Additionally, the father's court-appointed attorney had had no contact with the father—despite the attorney's efforts to contact the father. The father was released from incarceration two or three months prior to the final hearing. He did not attempt to work any of the required services or visit M.G. after he was released from incarceration. Throughout the case, the father showed no interest in participating in his services or making any changes in order to have M.G. in his life.

When M.G. was removed, she was placed with her older sister. By all accounts, M.G. had made a lot of progress and was doing well in the care of her sister. M.G. had also begun participating in sports and community activities, and she was attending school regularly and was no longer "very depressed." The caseworker explained that the Department would continue to provide services for M.G. if the parents' parental rights were terminated. M.G.'s sister intends to adopt M.G., and M.G. told the caseworker that she loves living with her sister and would like to live with her sister forever. M.G. did not feel like she had any relationship with her father. The record reflects that, at the time of trial, the father had not been in M.G.'s life "for some time because of his criminal history" and incarceration.

We note that neither parent appeared for trial. The caseworker testified that termination of the mother's and the father's parental rights would be in M.G.'s best interest. A counselor, who counseled both M.G. and the mother, also testified that termination of both parents' parental rights would be in M.G.'s best interest. The child's attorney ad litem agreed with the Department and asked the trial court to terminate the parental rights of both parents.

*Analysis*

In his first issue, the father argues that the Department presented no evidence or factually insufficient evidence to prove any of the predicate grounds for termination. Under this issue, the father challenges the findings made by the trial court pursuant to subsections (D), (E), (N), and (O) of Section 161.001(b)(1).

We hold that the evidence at trial supported the trial court's finding under subsection (O) because there was clear and convincing evidence that the father failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his child. The record reflects that the trial court specifically ordered that the father shall submit to and cooperate fully

in the preparation of a psychological or psychiatric evaluation; shall attend and cooperate fully in counseling sessions to address the specific issues that led to the removal of the child and any additional issues arising from the psychological examinations or counseling sessions; shall attend, participate in, and successfully complete parenting classes; shall submit to and cooperate fully in the preparation of court-ordered drug and alcohol dependency assessment; and shall comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit.[1]  The trial court notified the father that each of the above actions were required of him in order to obtain the return of the child and that the father's failure to fully comply could result in the termination of the father's parental rights.  Among other additional requirements, the service plan required the father to stay in communication with the Department, attend anger management classes, and notify the Department of any change in address or phone number.

The caseworker specifically testified that the father did not participate in counseling, drug testing, a psychological evaluation, or parenting classes and that the father has failed to stay in contact with the Department.

Furthermore, the record shows that, at the time of the final hearing, M.G. had been in the Department's care for well over nine months and that she had been removed from the parents' care due to abuse or neglect.  The Texas Supreme Court has held that the language "abuse or neglect of the child" as used in subsection (O) "necessarily includes the risks or threats of the environment in which the child is placed."  *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013).  In *E.C.R.*, the court determined that "placing the child's physical health or safety at substantial risk" is

---

[1]*See In re N.G.*, No. 18-0508, 2019 WL 2147263, at *6 (Tex. May 17, 2019) (stating that court of appeals must address the specificity of the provisions of the trial court's order, which may include the service plan).

sufficient to support a finding of "abuse or neglect." *Id.* at 240. Evidence of the mother's use of methamphetamine while M.G. was in the mother's care constituted sufficient evidence from which the trial court could have determined by clear and convincing evidence that M.G. had been removed because of a substantial risk of abuse or neglect. Even though M.G. was removed from the mother, the father still had to comply with the provisions of the trial court's order. The parent who fails to comply with a court order as required by subsection (O) need not be the same parent whose abuse or neglect triggered the child's removal. *In re D.R.J.*, 395 S.W.3d 316, 320 (Tex. App.—Fort Worth 2013, no pet.); *see In re D.R.A.*, 374 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Because the trial court could reasonably have formed a firm belief or conviction about the truth of the allegations as to the father under subsection (O), we uphold the trial court's finding under that subsection and overrule the father's first issue.

Even though we have upheld the trial court's finding under subsection (O), we must also address the father's first issue insofar as it relates to the findings under subsections (D) and (E). *See In re N.G.*, No. 18-0508, 2019 WL 2147263, at *4 (Tex. May 17, 2019) (concluding that due process and due course of law require an appellate court to address grounds (D) and (E) when raised by the parent on appeal and also require the appellate court to detail its analysis on grounds (D) and (E)).

Under subsection (D), we examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). Subsection (D) requires that the parent knowingly place or knowingly allow the child to remain in such conditions. Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions,

or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d at 634; *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.*

Here, the record is devoid of any evidence relating to the father's knowledge of the conditions of the home, the conditions of the home at the time of removal, or the father's knowledge of the mother's drug use. Although one witness mentioned the father's "criminal history," the extent of that criminal history was not proved at trial. The record failed to show that the father engaged in conduct or knowingly placed M.G. with someone that engaged in conduct that endangered M.G.'s physical or emotional well-being. Nothing in the record shows how long the father had been incarcerated or whether he was aware that the mother was engaging in conduct that endangered M.G.

We note that the testimony at trial comprises only twenty-four pages of the reporter's record. We note also that the trial court took judicial notice of its file. A trial court may take judicial notice of the contents of its file, but a trial court may not take judicial notice of the truth of any factual allegations contained in its file. *In re F.E.M.*, No. 11-12-00257-CV, 2013 WL 1092716, at *1 (Tex. App.—Eastland Mar. 14, 2013, pet. denied) (mem. op.); *In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.); *see* TEX. R. EVID. 201. Accordingly, we hold that the evidence is legally insufficient to uphold the trial court's findings as to the father under subsections (D) and (E). Consequently, we strike the trial court's

findings made pursuant to subsections (D) and (E) with respect to the father as the Department failed to present clear and convincing evidence under those subsections.

In the mother's sole issue and the father's second issue, they challenge the legal and factual sufficiency of the evidence to support the trial court's best interest findings. The trial court concluded that termination of each of the parents' rights was in the best interest of M.G.

With respect to the mother, the record reflects that she used methamphetamine while M.G. was in her care and continued to use methamphetamine while this case was pending, that she failed to take M.G. to school regularly, that the conditions of her home were concerning, that she failed to do what was necessary to provide a safe and stable environment for M.G., and that her missed visits and failure to answer the phone when M.G. called affected M.G. negatively.

With respect to the father, the record reflects that M.G. did not feel as if she had any relationship with her father. He had a criminal history and was incarcerated during much of the case below on "possession charges." Even after his release, the father made absolutely no effort to pursue any relationship with M.G. or to contact his attorney or the Department about working his services.

With respect to both parents, the record also reflects that M.G. had been placed with her sister in an appropriate home and that M.G. had improved and had done very well there. M.G. expressed a desire to continue living with her sister "forever." M.G.'s sister intends to adopt M.G. The child's counselor, the Department's caseworker, and the child's attorney ad litem all believed that termination of both parents' parental rights would be in M.G.'s best interest. Based upon the evidence presented in this case, we defer to the trial court's findings. *See C.H.*, 89 S.W.3d at 27.

We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's and the father's parental rights would be in M.G.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to M.G.'s desires, the emotional and physical needs of M.G. now and in the future, the emotional and physical danger to M.G. now and in the future, the parental abilities of the mother and the father, the plans for the child by the Department, the instability of the parents' home, the mother's use of drugs, the father's incarceration for "possession charges," and the stability of M.G.'s placement with her sister, we hold that the evidence is sufficient to support the findings that termination of the mother's and the father's parental rights is in the best interest of M.G. *See id.* We cannot hold that the findings as to best interest are not supported by clear and convincing evidence. We overrule the mother's sole issue and the father's second issue on appeal.

In his final issue, the father complains that the trial court abused its discretion when it denied the father's request for a six-month extension. *See* FAM. § 263.401(b) (West 2019) (permitting 180-day extension). We review the trial court's decision to grant or deny an extension requested under Section 263.401(b) for an abuse of discretion. *In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008, pet. denied).

We note that the father did not appear for trial and that his counsel did not request an extension until after the evidence had been presented and the parties had rested. At the end of his closing argument, the father's counsel asked the trial court not to terminate the father's parental rights and "in the alternative [to] give him an extra six months for which to do these services." This request was not timely and was not supported by any evidence. The father had not begun any services when

this case was called for trial; he had not even responded to his attorney or the Department despite their attempts to contact him. Therefore, the trial court did not abuse its discretion when it failed to grant a Section 263.401(b) extension. *See id.* We overrule the father's third issue on appeal.

*This Court's Ruling*

We modify the trial court's order of termination to delete grounds (D) and (E) with respect to the father only. As modified, the order of the trial court is affirmed.


KEITH STRETCHER

JUSTICE


June 11, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.